# EXHIBIT A

STATE OF MINNESOTA                                        DISTRICT COURT

COUNTY OF RAMSEY                                          SECOND JUDICIAL DISTRICT

---

|                                                      | Case Type: Medical Malpractice |
| Randy Johnson and Kyle Johnson,                      | Court File No.: _____ |

*Plaintiffs,*

vs.                                                        **SUMMONS**

Ear, Nose and Throat SpecialtyCare of
Minnesota, P.A., a Minnesota Corporation.

*Defendant.*

---

THE STATE OF MINNESOTA TO THE ABOVE NAMED DEFENDANTS:

    1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at: 1234 Smith Street, Saint Paul, MN 55105.

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

    5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If

you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

CROSBY LAW OFFICE

Dated: 4/29/14

Joseph M. Crosby, #175043
952 Grand Avenue
Saint Paul, Minnesota 55105
Telephone: 651-225-1860
Fax: 651-225-1506
**ATTORNEY FOR PLAINTIFFS**

2

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                          SECOND JUDICIAL DISTRICT

| | |
|---|---|
| Randy Johnson and Kyle Johnson, | Case Type:  Medical Malpractice<br>Court File No.: _____ |
| *Plaintiffs,*<br><br>vs.<br><br>Ear, Nose and Throat SpecialtyCare of<br>Minnesota, P.A., a Minnesota Corporation.<br><br>*Defendant.* | **COMPLAINT** |

Plaintiff, as and for her Complaint against Defendant herein, states:

### THE PARTIES

1. At all times herein, Plaintiffs Randy Johnson and Kyle Johnson (hereinafter "Plaintiffs") were married and resided in Prescott, Wisconsin.

2. At all times herein, upon information and belief Defendant Ear, Nose and Throat SpecialtyCare, P.A., (hereinafter "Defendant SpecialtyCare") a Minnesota corporation was licensed in the State of Minnesota, governed by the laws of the State of Minnesota, County of Hennepin, and State of Minnesota. Defendant SpecialtyCare's principal place of business is located at 2211 Park Ave. S., Minneapolis, Minnesota, 55404.

3. At all times herein, upon information and belief, at all times herein, when Jeffrey Manlove, M.D. (hereinafter "Dr. Manlove") provided care and treatment to Randy Johnson in 2010, Dr. Manlove was an employee, agent, partner and/or owner of Defendant SpecialtyCare.

4. At all times herein upon information and belief, Dr. Manlove was licensed to practice medicine in the State of Minnesota and a board certified ears, nose, and throat (ENT) doctor.

5. At all times herein, upon information and belief, at all times herein, when Dr. Jon Thomas, M.D. (hereinafter "Dr. Thomas") provided care and treatment to Randy Johnson in 2010, Dr. Thomas was an employee, agent, partner and/or owner of Defendant SpecialtyCare.

6. At all times herein upon information and belief, Dr. Thomas was licensed to practice medicine in the State of Minnesota and a board certified ears, nose, and throat (ENT) doctor.

7. At all times herein upon information and belief, Defendant SpecialtyCare was liable for the damages caused by the negligent acts and omissions of Dr. Manlove and Dr. Thomas relative to the surgery of Randy Johnson.

## FACTS

The above paragraphs 1-7 are incorporated herein by reference.

8. In 2010, Randy Johnson was seen by Defendant Clinic's Dr. Manlove to evaluate a lump in the area below his right ear, near the parotid gland. Dr. Manlove ordered an aspiration of the lump performed, which determined the lump was benign.

9. Defendant SpecialtyCare's Dr. Manlove informed Randy Johnson he could remove the (mass) lump and the surgery was routine. Defendant Specialty Care's Dr. Manlove informed Randy Johnson the risks associated with the removal of the mass. Specifically, Defendant SpecialtyCare's Dr. Manlove explained the only

2

risks which could occur would be "some temporary" injury to the facial nerve. Defendant SpecialtyCare's Dr. Manlove informed Randy Johnson that the facial nerve could only be injured if the nerve was entangled in the mass and it was stretched, but the injury would only be temporary.

10. Defendant SpecialtyCare's Dr. Manlove explained to Plaintiff the risk of permanent damage. He stated permanent damage would only occur if the parotid tumor was cancerous and the nerve had to be sacrificed.

11. Plaintiff alleges that Dr. Manlove did not explain that absent cancer, there was a risk of facial paralysis to half of Randy Johnson's face, requiring ongoing facial surgeries, pain, Botox treatment, and no recovery.

12. Defendant SpecialtyCare's Dr. Manlove did not explain to Randy Johnson the alternative to simply monitor the benign mass so as not to endanger any injury to the facial nerve. Defendant SpecialtyCare's Dr. Manlove never explained to Randy Johnson that since the mass was benign it did not need to be removed. Defendant SpecialtyCare's Dr. Manlove did not explain if the facial nerve was injured or cut, Randy Johnson could have permanent and complete loss of half his face or that he could have permanent loss of partial function of half his face.

13. On May 4, 2010, Defendant SpecialtyCare's Dr. Manlove and Dr. Thomas performed surgery to remove Randy Johnson's mass at United Hospital in St. Paul, Minnesota. Prior to the surgery Defendant SpecialtyCare's Drs. Manlove and Thomas placed an electronic nerve monitor, called a NIM monitor, on Randy Johnson's face in order to monitor and protect the facial nerve.

14. The NIM monitor was used to alert Defendant SpecialtyCare's Drs. Manlove and Thomas to the proximity to the facial nerve during surgery, in order to prevent facial nerve injury. The NIM monitor produced an alarm sound when the surgeon(s) operated in close proximity to the nerve. When the NIM sounds, the surgeons are suppose to immediately stop and locate the facial nerve to ensure it remains protected and out of danger of injury.

15. Before Defendant SpecialtyCare's Drs. Manlove and Thomas had even reached the area of Randy Johnson's mass, they dissected the facial tissue in the area of the facial nerve trunk, but did not identify the facial nerve.

16. Drs. Manlove and Thomas continued to cut Randy Johnson's facial tissue without identifying the facial nerve when the NIM monitor "squawked."

17. Drs. Manlove and Thomas chose to ignore the significance of the NIM alarm and continued to cut facial tissue and cut directly through the facial nerve.

18. As a result of their failure to meet the standard of care and to identify the facial nerve, and their choice to ignore the NIM monitor warning, Drs. Manlove and Thomas completely cut through the main trunk of the facial nerve.

19. Defendant SpecialtyCare's Drs. Manlove and Thomas continued the surgery to remove the mass located on top of the parotid gland.

20. The mass was neither cancerous nor entangled with the facial nerve. The mass was removed without any difficulty.

21. Defendant SpecialtyCare's Drs. Manlove and Thomas sutured the ends of Randy Johnson's facial nerve together, but his face is permanently paralyzed as a result of the facial nerve being completely severed.

4

22. Randy Johnson has required multiple surgeries and continuous Botox shots to repair the damage done from the paralysis to half his face. He will in the future require more surgery and continued Botox injections. He suffers from constant pain in his face since the surgery by Defendant SpecialtyCare's Drs. Manlove and Thomas.

23. Randy Johnson has permanent paralysis of the muscles of the right side of his face. Randy Johnson has experienced physical emotional, economical and psychological damages as a result of Defendant SpecialtyCare's Drs. Manlove and Thomas negligence treatment.

24. Kyle Johnson, wife of Randy Johnson, has suffered emotional, psychological and economic damages as a result of Defendant SpecialtyCare's Drs. Manlove and Thomas negligence.

25. Both Randy Johnson and Kyle Johnson will suffer damages in the future from the negligence of Defendant SpecialtyCare's Dr. Manlove and Dr. Thomas.

CLAIMS

The above paragraphs 1-25 are incorporated herein by reference.

26. Plaintiffs allege that the acts and omissions of Drs. Manlove and Thomas were negligent in that they did not disclose to Randy Johnson the risk of permanent facial nerve injury and permanent facial paralysis.

27. Plaintiffs allege that the acts and omissions of Drs. Manlove and Thomas were negligent in that they did not identify and protect Randy Johnson's facial nerve from injury.

5

28. Plaintiffs allege that the acts and omissions of Drs. Manlove and Thomas were negligent in that they did not posses the skill and knowledge required of surgeons that perform the removal of a benign facial mass near the trunk of the facial nerve, which require them to identify and protect the facial nerve from injury.

29. Plaintiffs allege that the acts and omissions of Drs. Manlove and Thomas were negligent in that they did not place Randy Johnson's safety first.

30. Defendant SpecialtyCare is liable for any negligent acts, omissions, and damage caused by Drs. Manlove and Thomas relative to the negligent informed consent, negligent care, treatment, and surgery of Randy Johnson.

31. As a result of Defendants' negligence, Randy Johnson has incurred permanent, serious life-changing physical, psychological, emotion, medical, and economical damages. These damages include, but are not limited to, permanent facial nerve paralysis, unnecessary surgery, loss of future income, pain, suffering, permanent scarring, and loss of enjoyment of life.

32. As a result of Defendants' negligence, Plaintiffs Randy Johnson and Kyle Johnson have in the past and will in the future incur medical bills, loss of consortium, and loss of enjoyment of life.

33. Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff Randy Johnson prays for damages against Defendant Ear, Nose and Throat SpecialtyCare of Minnesota, P.A., a Minnesota Corporation in an amount in excess of Fifty Thousand ($50,000.00) Dollars for his damages, expenses and costs, and for such other and further relief as this Court deems proper.

6

WHEREFORE, Plaintiff Kyle Johnson prays for damages against Defendant Ear, Nose and Throat SpecialtyCare of Minnesota, P.A., a Minnesota Corporation in an amount in excess of Fifty Thousand ($50,000.00) Dollars for her damages, expenses and costs, and for such other and further relief as this Court deems proper.

Dated: 4|28|14

CROSBY LAW OFFICE

Joseph M. Crosby, #175043
952 Grand Avenue
Saint Paul, Minnesota 55105
Telephone: 651-225-1860
Fax: 651-225-1506
ATTORNEY FOR PLAINTIFFS

7

## ACKNOWLEDGMENT

The undersigned acknowledges if the court should find the undersigned acted in bad faith in asserting the cause of action stated in this pleading, the opposing parties in this litigation may be awarded costs, disbursements, and reasonable attorney and witness fees pursuant to Minnesota Statute §549.21, Subd. 2.

CROSBY LAW OFFICE

Dated: 4/28/14

Joseph M. Crosby, #175043
952 Grand Avenue
Saint Paul, Minnesota 55105
Telephone: 651-225-1860
Fax: 651-225-1506
**ATTORNEY FOR PLAINTIFFS**